Thank you, Your Honor. May it please the Court, my name is David Copley, and I have the honor today to represent the appellants. I'd like to reserve some time in my argument. Let me shoot for five minutes for the Court's indulgence. Your Honor, my clients challenged the legal authority of Snohomish County to impose impact fees that are outside the county's limited statutory authority. But this appeal is not about the merits. The merits were not decided below. What was decided below and challenged today is the procedural hurdles that we need to jump through in order to get to the merits. The district court below, Judge Lassnig As far as I can tell, Judge Lassnig decided everything on the question of state law, and I think there's no diversity of citizenship. Is there a federal claim in this case sufficient to give us jurisdiction? Your Honor, this matter was originally filed in state court and then removed to federal court. In our complaint, we asserted a federal constitutional claim. 1983 claim? Yes, Your Honor. Looks like a pretty thin claim. It was so thin that Judge Lassnig didn't even think he had to address it. It is a fairly thin claim, Your Honor, but the removal was not challenged. So we're in federal court. I know you're in federal court, and I know it wasn't challenged, and the effect in subject matter jurisdiction is not waivable. Well, we would rather be in state court, Your Honor. So if this Court determines there is no federal subject matter jurisdiction, that may be an appropriate result. Okay. I kind of thought you might like that line of argument. Okay. On the assumption that we are properly here. Yes. Based on that assumption, Your Honor, we are focused on the procedural requirements of state law, and it is a matter of state law. Judge Lassnig made two findings. First, he found that impact fees, which are a unique creature of state law, are taxes. He put the tax label on impact fees. And he said because they are taxes, they must be paid under protest like some other kinds of taxes. And if you don't pay them under protest, you can't get into the courtroom. Judge Lassnig also put another label on impact fees. He said they were also land use decisions. And because they are land use decisions, you must appeal them, if at all, under the Land Use Petition Act, another creature of state law known as LUPA. And if you don't jump through those hurdles, you can't get into the courtroom. We think that Mr. — that Judge Lassnig was wrong on both counts. Impact fees are neither taxes nor land use decisions. And his — the labels that were used to keep us from getting to the merits were applied improperly. Counsel, is there a case pending in the Washington Supreme Court to sort all of this out? Yes, Your Honor, there is. James v. Kitsap County has been fully briefed. It was argued to the Washington Supreme Court January 13th of this year. And that case is on point. And when it's decided, any day now, we expect that it will fully dispose of all these issues from the Washington Supreme Court's perspective. In that case, again, the facts are so compellingly similar to this case. Developers in Kitsap County were assessed impact fees when Kitsap County was out of compliance with the Growth Management Act. Some of the developers paid under protest. Some didn't. None of them filed a LUPA appeal. But they went straight to court invoking the court's original jurisdiction. The trial court, the Superior Court in that case, in that the GMA-based impact fees were not governed by LUPA. They were not land-use decisions. And even though some of the developers had not paid under protest, that was not a bar to them proceeding in State court. And the failure to exhaust administrative appeals was not a bar to proceeding in State court. Instead, the State court judge entered summary judgment in favor of the plaintiffs in that case. And, of course, now it's up on appeal to the Supreme Court. And the Supreme Court of Washington will have the final word on that. Did you request certification in the district court? Certification of the question? No, Your Honor, we did not. To the Supreme Court, which has the same issue. No, Your Honor. We no party has requested certification of a question to the Washington Supreme Court. Frankly, we considered that and actually consulted with the Ninth Circuit mediator, Mr. Geltz, about whether that would be prudent. And our determination and maybe we made the wrong call, was that given the fact that this case is trailing 11 months behind the Washington case, it wouldn't make any difference because the Washington case is going to be decided anyway in advance of this Court's decision. So, well, assuming we're slow? Assuming just an ordinary calendar, Your Honor. Or assuming we wait. Assuming you wait. And also assuming that the other court has an 11-month head start. We run awfully fast sometimes. Well, maybe you'll beat them to the punch. Although I do hear this loud and clear. Absent certification, we may nonetheless accomplish much the same result simply by waiting to see if the Washington Supreme Court enlightens us. Absolutely, Your Honor. And I'm sure that as soon as the James case is decided, parties on both sides will bring that to the Court's immediate attention for your consideration. Absent a definitive ruling from the Washington Supreme Court, the task of this Court today, however, or when it rules, is to predict what the Washington Supreme Court would do. And in doing so, obviously, you can look at the lower court opinion in James, you can look at other decisions of the Washington Supreme Court in appellate courts, if it will help you divine how you think the Washington Supreme Court is going to end up on this issue. And we think that looking at all the case law, it's a pretty safe bet, at least our contention, that the Washington State Supreme Court is going to affirm the result in James because the Court, in that case, we think got it right, just as we think that the district court, in our case, got it wrong. Now, am I wrong? Was Judge Lasnik a Superior Court judge? He was, Your Honor. So we've got two Superior Court judges, one former and one current, disagreeing on a question of Washington law? That is correct, Your Honor. Now, on the briefs presented to this Court, both of you are confident, then, that the Washington Court is going to rule the way you'd like it to rule? Well, I was also confident that John Kerry was going to win, so I cannot predict. Just don't tell us what your exit polls are on this case as you leave the courtroom. Your Honor, we think that all the case law points to a certain result, that obviously the Supreme Court of Washington will do whatever it's going to do. The reason for my question is, wouldn't you be benefited by our waiting? Frankly, Your Honor, I think — Unless, of course, we go your way. Your Honor, I think both parties and also the judicial system would benefit from this Court waiting to see what the James Court decides. And it may or may not resolve relevant issues, but it might not. It may or may not. And it may go against us. I mean, I don't know what the Supreme Court is going to say, but I do think that it's appropriate for the Supreme Court of Washington to decide this issue of State law. Now, obviously, this Court is also obliged to interpret State law. I know we have to guess and speculate as to what a Court's going to do, but it's unusual to have the Court have the issue before it while we're speculating. I agree, Your Honor. And if I were wearing a black robe today and I was in your position, I would consider the law, make my own best judgment, and then just wait and see if an opinion comes from Olympia in the next weeks or months. But obviously, that's — the Court has the discretion to do that or not. What both parties agree upon today is the Newcastle case, which both sides rely upon as indicating how the Washington Supreme Court is likely to come out on this issue. We rely on Newcastle, so do the appellees. Newcastle's a 1999 decision of the Court of Appeals, and the Newcastle decision is striking in three respects. First, the parties begged the Court to rule that impact fees were taxes. The Court said, no, we refuse to state that impact fees are taxes. We're not going to put a label on these things. Secondly, the parties begged the Court to categorize impact fees as land-use ordinances. The Court said, no, we're not going to put a label on these things. They are not land-use ordinances. What did the Court do instead? The Court said that impact fees do not belong in either category. They said that they — we do not hold that they are taxes. We do not hold that they are land-use ordinances. What we do hold is they are — that they are a separate source of revenue that augments taxes. So the Court went out of its way to say what impact fees are not or what — and what they are. And we think the Court should be taken at its word. And we — and that is — that is the guidance that we offer to the Court in terms of predicting how the James Court is going to come out on this issue. It's not just the Newcastle case, however. If you look at all the case law in the tax realm and in the looper realm, you come to the same conclusion, that it's not sufficient to try and put an easy label on impact fees. Impact fees are a — a unique and quirky creation of State law that don't fit neatly in either box. Turning first to the — to the tax argument, the first basis for the district court's decision, we offer three reasons that the Court should reject putting a label of taxes on impact fees. First, this is — that label has been explicitly rejected by the Washington courts. Secondly, it's inconsistent with existing case law, including Supreme Court case law. And thirdly, statutory construction indicates that payment under protest is not a condition precedent for impact fees as currently constituted under State law. So turning to the first of those arguments, Washington courts have explicitly refused to put the label taxes on impact fees. I mentioned the Newcastle case. That's a court of appeals decision from 1999. Prior to that, in 1994, the Supreme Court in Tryman said the same thing. They said, we refuse to find, we refuse to hold that impact fees are taxes. So that is the last word from the Washington Supreme Court on this issue. A third case from 2002, the Wellington case, said the same thing. The parties implored the Court to put a label of taxes on impact fees. The Court said, no, we are not going to put that label on impact fees. Now, why did they do so? Argument number two, existing case law indicates that it would be improper to label impact fees as taxes. In the Henderson-Holmes case, which is a 1994 Supreme Court decision, again, developers sued concerning impact fees. Two-thirds of the developers in that case did not pay under protest. One of the developers did pay under protest. All of the developers won. All of the developers got their money back. If impact fees were a tax, and if you had to pay under protest in order to bring a valid cause of action, those two developers in Henderson-Holmes, who never paid under protest, never would have got in the courthouse door. But the Supreme Court of Washington said not only did they get in the courthouse door, they win. Henderson-Holmes disproves the contention that impact fees must be a tax and must be paid under protest in every event. The same result from the Court of Appeals in the Nolte case, 1999. Here, the plaintiff challenged the city's lack of authority to impose impact fees. The plaintiff did not pay under protest. He went straight to the courthouse, asked for declaratory judgment. He won. It was affirmed on appeal. If impact fees were a tax and always had to be paid under protest, Nolte would have lost that case. Nolte and Henderson disprove the broad contention relied upon by the district attorneys here. Third, as a matter of statutory construction, the impact fee statute does not require payment under protest. The simple language of the statute, 82.02.070, says impact fees may be paid under protest in order to obtain a development permit. And that's where the statute stops. It does not go on and say, and it's a condition precedent to filing a lawsuit. The only way that you can go on and read into that some language that it's a condition precedent is if you read a different statute. And that's what Judge Glasnick did below. Neither of the parties briefed this, by the way. Judge Glasnick just glommed on to it. He looked at 84.68.020, which is a property tax statute. And he said, oh, look at the property tax statute. If you read that one, it says you need to pay property taxes under protest. And if you don't, it's a condition precedent. You never get to the courthouse door. And Judge Glasnick concluded that because the property tax statute made it an explicit condition, he could read into that an explicit condition in the impact fee payment under protest provision. But you're mixing apples and oranges there, particularly in view of Columbia Steel v. State, which is a 1949 decision of the Washington Supreme Court which says the property tax statute is limited to property taxes. You cannot apply it to other kinds of taxes or other kinds of fee impositions. Judge Glasnick maybe wasn't aware of that case. He tried to bootstrap the property tax statute under impact fees, but that was not an appropriate use of that authority. If you're going to look at other tax statutes, the more appropriate one, not property taxes, but Washington has a tax refund statute, RCW 84.69.100. And that's analogous to what we're trying to do in this case. Our position is that the impact fees imposed were illegal and should be refunded. That's the essence of our case. If you go to the tax refund statute, what it says is no written protest by an individual taxpayer needs to be filed to receive a refund on a State, county, or district-wide basis. If you look at a more analogous statute, it exclusively says the payment under protest is not a condition. Now, turning briefly to the second argument, LUPA. Again, Judge Glasnick concluded that if you put the label land use decision on impact fees, you can impose all of the procedural requirements of LUPA. But that simply doesn't hold up. First, LUPA by its own terms applies only to land use decisions. It's a term of art. What does it mean? Well, it's a decision about how the land is used. What is the zoning? What is the density? What's the setback? Are there do you need sidewalks? How tall can the building be? Those are obvious land use decisions. But not everything having to do with real estate decision is a land use decision. When you're not challenging the way the land is used, but the local government's authority to make any decision at all, you're invoking the local government's original jurisdiction. And here, there's no dispute. The superior court, and in this case the district court on removal, has original jurisdiction to decide the legality of any tax, impose, assessment, toll, or municipal fine. And according to the Cheney v. Federley case from the Supreme Court of Appeals in 2000, when you're invoking original jurisdiction, you go straight to court. No administrative hurdles, period. Cheney controls this. Secondly, if you look at LUPA decisions, the courts have been very careful to say that LUPA does not control every single appeal having to do with land use. Now, you're at three minutes. Do you want to save some time? I do, Your Honor. Let me spend another one minute wrapping this up, and I'll just have to short myself to the end. Because this is actually the one of the critical points I'd like to raise. There are four cases in Washington that explicitly say LUPA does not cover every conceivable challenge to local government authority. And I draw the Court's attention to the Nolte case of the Court of Appeals 1999, the Burst case from 2002, Grundy v. Brack from 2003, and from just a month ago, the Peterson v. County of Skagit case, which was found in 2004, Westlaw 2211743, decided on October 4th, 2004. In each of those cases, there was a challenge to the underlying authority of local government to issue any to levy any impact fees whatsoever. I'm sorry, not any impact fees, but to make any decision whatsoever. And in each of those cases, the Court said this is not a land use decision. This is not subject to LUPA. You don't have a 21-day statute of limitations. The appropriate thing for you to do is to go straight to superior court, invoke original jurisdiction, get your case decided. You don't have to pay under protest. You don't need to worry about LUPA requirements. I'd like to reserve the remainder of my time. Thank you. Thank you. Good morning, Your Honors. My name is Tom Fitzpatrick. I am the Assistant Chief of the Snohomish County Prosecuting Attorney's Office in the Civil Division. I am joined today by colleagues at the table who I will split some of this time in the argument. How do you want to divide it up? I will take approximately 12 minutes, and I will be addressing why there isn't jurisdiction because the Land Use Petition Act wasn't followed and that they do not have the developers do not have standing for failure to exhaust administrative remedies. Mr. Lancy will address the issue of why the developers' claims fail because they fail to play under protest and why the claims for prospective relief were properly dismissed, also address any issues. Finally, Mr. Walters from the City of Mill Creek will address the unique issue to Mill Creek. You get 12, they get 4 each? Mr. Lancy gets 5, and Mr. Walters gets 3. Okay. Well, we better get cracking then. Okay. Thank you, Your Honor. You probably all know this, but Washington State, when it adopted the Growth Management Act, developed a unique approach to the regulation of land development. You know, before we get into Washington law, I will ask your answer. This is a state law question, and as far as I know, there's no diversity in this case. You removed, on what basis did you remove, and on what basis do we have subject matter jurisdiction? The case was originally removed to, on the basis of the 1983 claim. And was the 1983 claim ever argued? The 1983 claim was not argued. Basically, the summary judgments below were on procedural issues, which do in fact relate to state law. The 1983 claim seems to me extraordinarily thin. I would agree with you, Your Honor, and if we ultimately need to get to that point, I certainly anticipate a summary judgment on that. Now, it's sufficient basis for subject matter jurisdiction that there be a plausible Federal claim. It can be a loser, but that's enough for jurisdiction. But if it's a frivolous Federal claim, there's no jurisdiction. Yes, but I have to say I would not at this point indicate that I believe that the case — I guess if I had to draw the distinction, Your Honor, I'd say I think it's a loser, but I wouldn't say that it is so meritless to fall into the frivolous lack of jurisdiction issue. Well, that may or may not be true, but I find myself in a somewhat uncomfortable position being asked to decide a question that's entirely based on state law, entirely between citizens of the State of Washington, which we've got a pending case in the Washington State Supreme Court. We're not the experts in this area at all. And nonetheless, you've come to us. I appreciate that very much, Your Honor. I must indicate that at the time that we removed the case, of course, there was not a pending case in the Washington Supreme Court. There was ongoing litigation in Kitsap that we didn't know where it was. And because of the pleading by the plaintiffs, the Federal jurisdiction, we felt that removal was appropriate, and they never challenged it. Okay. And what's your view as to the likelihood that the James case, when decided by the Washington Supreme Court, will help us with some of the issues in this case? Well, I think it could help you on some of the issues. I wouldn't hold myself out as an expert on the James case, but I have followed it, and I attended the oral argument. I'll also say that, you know, I don't know what they're going to do. I will say this, that they could decide the issues that's before the court. They could duck a lot of these issues, which are probably important. It might be worth our waiting for that decision. Yeah. But, you know, I cannot represent to you that I think that the Washington Supreme Court is going to decide the issues that are being placed before you, because they're there, but there's lots of other issues, such as did they have authority at all to do anything, and the court in the James case could make specific findings to a certain extent that would moot these very questions that are before the panel today. Okay. I also would like to say at this point that it's certainly the position of the county and local government that we believe that you should rule in the case, because we're in a terrible dilemma, and the dilemma is we have to be processing development. We, under growth management, have to have infrastructure there to support the growth. That's the mandate of where we are under GMA. We have to collect these fees and we have to expend these fees under certain periods of law. And so the longer that we wait, the larger we have exposure, because, indeed, this has been a roundabout collateral attack by the development. But if that's so, I'm not sure you really want us to affirm Judge Lasnik, because he said because they weren't paid under protest, I can't reach the merits as to whether or not they're valid exactions. Oh, I believe Judge Lasnik was correct. If this panel were to uphold Judge Lasnik, the case would basically be over as to the existing claims, and the developers would then have a mechanism to go in and challenge on both the administrative basis and under the Land Use Petition Act their contentions that the county does not, is out of compliance in one facet or another, so that fees cannot be imposed, so that the counties and the local governments then have notice about what they can or cannot do. And so it would be very helpful to have a resolution. But sustaining the district court will, in fact, put local government in the ability to have the finality and the certainty, which is central to why the Land Use Petition Act was adopted and why the Growth Management Act mandated an administrative procedure. What practical purpose would be served by requiring them to pay this fee under protest before they're allowed to, as it were, protest it later? A notice. A notice. And I have to say that I think, Your Honor, your question goes to one of the fundamental differences, if you will, between the parties here. The cases are clear that impact fees are challenged under the Land Use Petition Act. And we've cited a whole string of them. In fact, I'll give you an additional authority of the Pavlina case, where, in fact, these things under Washington law have always been challenged essentially under LUPA. The developers are trying to make a big end run and saying, we're talking about the fundamental authority of local government to do this. That's not true. They haven't challenged the constitutionality of the scheme, the local ordinances, any of that. There's no question about authority of local government in this case. What they're trying to do is to dress up a bunch of individual, discreet, factual determinations and time-sensitive determinations, such as, oh, county, you passed a change in zoning way up there by the Cascades, and so you won't be able to do impact fees down by Edmonds in the shoreline. And what we're saying in here is, if they're paying under protest or they're raising those issues and availing themselves to the administrative process and the expeditious judicial review process, we then have notice what to do instead of people coming back years after the fact. Paying under protest and exhausting administrative remedies works somewhat differently. I understand, actually, quite readily how it helps you if they've got to go through your administrative process. Or even LUFA because of the expedited review. Right. But I'm not quite sure I understand why that same argument applies when they pay it and they don't say under protest. You know darn well it's under protest because they're filing a lawsuit. Well, I don't want to steal Mr. Lenski's thunder, but, I mean, you know, one of the things that's obvious is that the courts are to give meaning to a statute, and the statute specifically provided that these things can be paid under protest. And the cases, whether, however you want to put a label on it, say, you have that reason, the reason that it's there is so that government knows how to plan and what to do with its money. And that's particularly critical here where we have to have specialized funds built up to expend on long-developed capital facilities plans for infrastructure. And what would be the statute of limitations if they're not, this is just an assumption which I do not ask you to agree, but assume that we disagree with you on the paying under protest, that there's not a tax in that sense. What's the statute of limitations in which they'd have to file for a refund? Like how long do you have to wait for that notice? I suppose I would defer to Mr. Lenski. I believe it's one year on the excise tax statute if you would find this was an excise tax. And if you would find that LUPA would be applicable, then I believe the statute of limitations would be the 21-day period that's required there. So on either of those, you probably wait a year on the outside tax? I think at most, at most. And, you know, in this particular case, I mean, they tried to go back eight years. And, you know, so I think as my time begins to grow short, Your Honor, that there's a couple of things that I really do want to focus on here, which is what's key. I already mentioned to you that there's a whole series of decisions where these impact fees have been challenged, okay, in the context of a land use petition act. And it is undisputed in this record that the imposition of these fees, all right, is required as a condition of development. And the statute is clear. For conditions of development, these are in fact, LUPA is the exclusive remedy that you want to have to pursue this, okay. And they have tried to come up with a whole series, I guess, of end runs by talking about things such as original jurisdiction or some other way to create a collateral attack. But if you really look at the authorities that we have cited in our brief, you'll find that Washington law does not allow these collateral attacks. They have said, for instance, in the Samuel's Furniture case or the Grundy case, that if you're trying to seek damages or if you are trying to plead that you're in an original jurisdiction of the court and it's based upon the fact that you failed to challenge the underlying land use action, which includes attorneys, excuse me, impact fees, that you're therefore out of luck. And you know that makes sense. And one of the things that the district court also did was to analogize this to payments for local improvement districts under the Patchell case and say, look, there's some meaning, there's some reason here why when we went to this scheme, the Washington legislature and Washington law demands both administrative and rapid judicial response. And our duty is to analogize it. So we believe it's clearly required under the statute. But I think Judge Lasnik also made an appropriate analogy when he said, you know, substantial compliance really does make sense. Finally, I have to say under the administrative remedies, and I'll only be brief, obviously it makes clear there's no dispute that these types of decisions, the cases are reported that hearing examiners look at them all the time. These very plaintiffs used it before. They knew about the procedures. They knew how to do this. And let me assure you, hearing examiners don't always rule for the county. And so the futility argument really does not pass the straight-faced test. At that, I will tender time to my colleagues. Thank you very much. Counsel, could I ask you before you leave? Sure. What's the significance of this additional authority you have submitted to us? It shows, number one, is it's a challenge to an impact fee. It's done under a land use petition. It's also done under a payment of protest. And it even vitiates further the argument of the developers, because in that case, they're saying, did you have fundamental authority, because they weren't in place when you there wasn't the Growth Management Act. It wasn't even applied. So it is on all fours to show you that LUPA and payment under protest is, in fact, required to bring this kind of an action. Thank you. Thank you. Thanks very much. Your co-counsel is pretty true to his word. You've got some time. Thank you, Josh. I'm David Lindsey, and I represent the school district defendants here. And let me just address this case of the James case that's pending in the Washington State Supreme Court. As Mr. Fitzpatrick referred to, the money that's been collected by the fees has been spent by the districts or else earmarked for future projects. This case was filed over two and a half years ago. During that whole time, we've had hanging over our heads what's going to happen with the fees that we've collected and the fees that we've committed or spent. Judge Leslie's decision was over a year ago, and we still have this sort of Damocles, if you will, over our heads. They said today if they wanted to certify this, they could have moved for that earlier, and they chose not to. They're hedging their bets. So we're perfectly happy for this Court to go ahead and decide this issue, because it's not that complicated. The statute answers the question. Go back a little bit. You don't even have to determine whether these are fees or taxes. They're Growth Management Act impact fees. They could be determined right from the Growth Management Act. Counsel, if they're not taxes, then how does the payment under protest provision, how is that triggered? That's under the Growth Management Act itself, Your Honor. Okay. If you look at – well, let me just explain how the fees are collected. The person will come in and they'll apply for a permit to do some development, and the county will determine what's the kind of development you have and what kind of impact will that have generally, and it assesses a fee. So if you objected to – you can either object to the fee and go to court, run to court, and get a declaratory judgment, do I have to pay a fee here? That's one way to do it. But if you want the permit, the statute says if you want the permit, you need to pay under protest. Does it say under protest? Well, it says impact fees may be paid under protest in order to obtain a permit or other approval of the development activity. So their argument is that it's not as explicit as the one for taxes, which says you must pay under protest in order to prosecute a lawsuit. It doesn't say that, but if you think about it, their argument would make this section totally superfluous. Why even have it if they don't have to make a protest to make their fees, to pay their fees and then challenge the permit? The statute says if you want a permit, you can get it. You have to pay it on your fees under protest. Well, it doesn't say have to. It says may, but I understand the argument. Right. No, it's not that, you know, we would be out of work if these statutes were written so clearly that we would all know what they meant. That's true. But if you think about it, it makes sense to do it that way. And I hearken back to this notion that what we have here is a class action suit seeking tens of millions of dollars by people that have applied for permits, and I don't want to say they were laying in the weeds, but I assert that this is an afterthought that came up. And the problem we face, if they're allowed to bring the claims on a class action basis without giving us any notice, without challenging them up front or giving us any notice that it was going to be objected to, then here we are, having potentially being in a situation where we pay back tens of millions of dollars on after-the-fact claims of wrongful imposition of these fees that we didn't understand was going on at the time. So we assert that if you look at the Growth Management Act, you can decide the case right there. It says they may be paid, but we assert that the may means if you want to get your permit, you have to pay under protest. I understand you can't control the Washington State Supreme Court, but you might be able to give us some sense as to what their – how long they ordinarily take after they've had oral argument before they come out with an opinion. I wish I could, Your Honor, on this one. I don't know. This case came up on a direct appeal, I think, from the trial court, so it's taken longer perhaps than the ones that – it hasn't had the benefit of the intermediate court analysis at an appellate level, so it's got a certain other complication to it. It could come out tomorrow. It could come out in six months. I had a case that came out two years after it was argued for reasons that I don't know. Okay. I think our point from the school district's behalf is in a way some certainty around this issue for us, at least the ones in Stohomish County. It's worth it to put it before this Court to make that decision. You might get out of us a certainty as to this case. You certainly won't get certainty as to Washington State law. Well, we'll – we defer to your interpretation. Okay. Now, nothing was said about the class action issue here. I'll simply say it's pretty clear that this class action certification issue was mooted by the Court's decision to – The Court didn't reach it. It's not in front of us. Yes. Unless there are further questions, I'm done. You're true to your word as well. Thank you. Three minutes left. Good morning, Your Honors. May it please the Court. My name is Mike Walter. I'm here on behalf of the third of the group of appellees, the City of Mill Creek. I will be – try to be true to my word also. I'm here on a discrete issue for the City of Mill Creek, and that concerns whether the City should even be a proper party to this action in light of the undisputed record that is before you. And that record basically makes clear that the City's only action in this matter was to impose through interlocal agreements that's the State Environmental Policy Act, SEPA-based mitigation fees, and not the GMA-based impact fees that are the subject of the lawsuit. I guess as a preliminary matter, I'd like to say that the City does join in with the arguments and authorities and the relief requested by the other appellees. And I think it's fair to say that the City would also join in with the comments made by esteemed counsel that the City, too, would like a prompt resolution of these issues to find out whether it needs to be a party to this action. My argument is fairly simple, Your Honor. It's addressed near the end of the brief, and it's based on, I think, an undisputed record that at no time in the City's history, at least material to the claims in the appellant's lawsuit, did the City ever impose GMA-based impact fees that are the subject of this lawsuit. And I don't think you need to go much further than looking at the complaint, the amended complaints or any of the pleadings in this case to see that the appellant's whole case hinges on GMA, Growth Management Act, impact fees under RCW 8202.050. I think they'll have to concede that. What is equally clear and undisputed in this record is that at no time has the City ever imposed those kinds of GMA fees. Instead, what the City did through interlocal agreements, which are referenced in Petitioner's complaints or the appellant's complaints, is impose SEPA-based mitigation. Now, why is that important? GMA-based impact fees are not the same as SEPA-based mitigation fees. They're completely distinct and different. They have different sources of law. The GMA fees come from the Growth Management Act enacted in 1990. The SEPA mitigation fees have been authorized since 1971 under a separate statutory provision, RCW 43.21c. They have very different purposes. GMA fees are designed to help offset the cost of system improvements, very discreet, very limited. SEPA-based mitigation fees can be used for any environmental impact. For all those reasons, Your Honors, it's clear the City shouldn't be in this lawsuit as an independent basis for dismissal and ask that the City be dismissed, notwithstanding the other good arguments that were brought here. Any questions? Thank you very much. And all three of you get a reward for timeliness. Thank you. And you've saved us a little time. I wish I were as concise as my opposing counsel. Five quick arguments, if I can squeeze that into a minute and a half. Mr. Fitzpatrick argued that impact fees are always challenged under LUPA. And he mentioned a couple cases. But what he didn't tell you was that if you're challenging the calculation of an impact fee, yes, that's handled under LUPA. And there are a couple cases that say that. The Aldo Verde case and United Development case talk about methodology for computing an impact fee. However, if you're challenging the ability, the legal authority of local government to impose any impact fee whatever, you're not challenging the calculation. You're challenging the fundamental authority. That is not a LUPA decision. And those are the cases I discussed earlier. Nolde v. City of Olympia, Burge v. Snohomish County, Grundy v. Brack Family Trust, and the Peterson v. Skagit County case. All of those cases very clearly say it is not a LUPA case if you're challenging the fundamental authority. It's not as simple as the defendants would have you believe. Secondly, in terms of the payment under protest notice, the local government has notice when they're out of compliance. The Growth Management Hearings Board of Washington tells them when their plan is out of compliance. And so they don't need payment under protest from a taxpayer to tell them that there's a problem. They get notice in big red letters from the Growth Management Hearings Board. Notice is simply a red hearing. In terms of the Pavlina case, the recent authority that was given to you today, that case was decided after the lower court decision in this case. So the folks in Pavlina, or the court in Pavlina, had the benefit of Judge Lasnik's opinion, which said, if you don't pay under protest, you're dead meat. If you don't follow LUPA, you're dead meat. So, of course, the Pavlina recited that, assuming that that was going to be good law. Sotomayor It doesn't have to, though. Nolde It doesn't have to. But that's what the parties — I mean, again, the parties are going to be risk-adverse. The plaintiffs in Pavlina said, we're going to cover our bases. We're going to pay under protest. We're going to go under LUPA. Lasnik says we have to. So the fact that they followed that doesn't mean, if not in a conception of any kind, that the court was correct. Sotomayor Could you address Mill Creek before you — Nolde Yes, Your Honor. That's — Mill Creek argument, he was trying to argue the merits of SEPA, and we'd like to argue the merits, too, but we never got to that point. The SEPA argument was never decided by the district court, and it was never appealed by us or by any other party. Sotomayor Was it included in the complaint, though? Nolde It was included in our complaint, but there was no — I'm sorry. Sotomayor How? Nolde We allege that the city of Mill Creek improperly imposed its SEPA impact fees in contravention of its limited authority. So that is part of our case. Sotomayor They called it impact fees in the complaint? Nolde Yes, Your Honor. That is our contention. We think that they're subject to the same limitations as other kinds of impact fees. And we have legal authorities. Sotomayor I'm sorry. I'm not sure if we could present on that issue, but we've never been able to talk about the merits. Again, another procedural point, and I don't want to belabor this. Roberts 20 seconds. Sotomayor Okay. When the summary judgment motions were brought to Judge Lasnik, the county filed a motion for summary judgment that did not talk about SEPA. Mill Creek joined that motion, but its joinder did not talk about SEPA. When Judge Lasnik ruled on summary judgment, there was no motion for summary judgment raising the SEPA issue. The only SEPA argument was in a motion argued at the same time on class certification in which the city of Mill Creek raised the fact that there were SEPA impact fees that might be different from GMA impact fees as one of the issues the court should consider on class certification. But it was never presented as an issue on summary judgment. Roberts In other words, we don't have a final judgment and we don't have appellate jurisdiction. Mill Creek Yes, Your Honor. Roberts Thank you for your time. Roberts Okay. Thank all of you for your quite useful arguments. The case of Sundquist-Holmes v. Snohomish County is now submitted for decision. We stand in adjournment. All rise. This report for this session stands adjourned.
judges: Alarcon, W. Fletcher, Rawlinson